# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **STACY DIXON**, individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>**MARKETPLACE UNCTION, INC. D/B/A SCARPINO'S PIZZERIA AND TEK HAMMENT**,<br><br>Defendants. | Court File No. _____<br><br><br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff Stacy Dixon ("Plaintiff"), individually and on behalf of all other similarly situated persons, brings this Complaint against Marketplace Unction, Inc. d/b/a Scarpino's Pizzeria and Tek Hamment, and hereby alleges as follows:

## INTRODUCTION

1. Defendants operate numerous Scarpino's Pizzeria franchise stores. Defendants employ delivery drivers who use their own automobiles to deliver pizza and other food items to their customers. However, instead of reimbursing delivery drivers for the reasonably approximate costs of the business use of their vehicles, Defendants fail to reimburse at all for the use of the drivers' vehicles, such that the drivers' unreimbursed expenses cause their wages to fall so far below minimum wage that many likely operate at a net loss.

2. Plaintiff brings this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., as a class action under Minnesota's Fair

543745.1

Labor Standards Act, Minn. Stat. Ann. § 177.21 et seq. ("MFLSA"), Minnesota's Payment of Wages Act, Minn. Stat. Ann. § 181.101 et. seq., ("PWA") (collectively "Minnesota Wage Law") and common law to recover unpaid minimum wages and overtime hours owed to himself and similarly situated persons employed by Defendants at their Scarpino's Pizzeria stores.

## JURISDICTION AND VENUE

3. The FLSA authorizes court actions by private parties to recover damages for violation of its wage and hour provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question).

4. Venue in this District is proper under 28 U.S.C. § 1391 because Defendants employed Plaintiff in this District, Defendants operate Scarpino's Pizzeria franchise stores in this District, and a substantial part of the events giving rise to the claim herein occurred in this District.

## PARTIES

5. Plaintiff Stacy Dixon is a natural person residing in Cook County, Illinois.

6. Defendant Marketplace Unction, Inc. d/b/a Scarpino's Pizza is a Domestic Corporation and may be served via its registered agent, Greg Beyer, who may be served at 816 Walnut Place, Chaska, MN 55318, or wherever he may be found.

7. Defendant Tek Hamment is individually liable because, during the relevant times, he was an owner of substantial interests in Defendant Marketplace Unction, Inc. d/b/a Scarpino's Pizza, served as an officer of the entity, and held managerial responsibilities and substantial control over terms and conditions of drivers' work as he

held the power to hire and fire, supervised and controlled work schedules and/or conditions of employment, determined rates and methods of pay and/or expense reimbursements, and maintained employment records and/or held control over employment records. Defendant Tek Hamment may be served at 816 Walnut Place, Chaska, MN 55318, or wherever he may be found.

8.  Plaintiff Stacy Dixon was employed by Defendants from approximately August, 2014 to November, 2016 as a delivery driver at Defendants' Scarpino's Pizzeria Pizza stores located in the Minneapolis-St. Paul area and within this District. Plaintiff's consent to pursue this claim under the FLSA is attached to this Original Complaint as "Exhibit 1."

## GENERAL ALLEGATIONS

*A.  Defendants' Business*

9.  Defendants own and operate numerous Scarpino's Pizzeria Pizza franchise stores including stores within this District and this Division.

10. Tek Hamment is an owner, officer, and director of Marketplace Unction, Inc. d/b/a Scarpino's Pizzeria.

11. In this capacity, Tek Hamment put the pay scheme at issue in place, has overseen and enforced Defendants' pay practices, and is, therefore, individually liable for the violations at issue.

12. Defendants' Scarpino's Pizzeria Pizza stores employ delivery drivers who all have the same primary job duty: to deliver pizzas and other food items to customers' homes or workplaces.

## B. *Defendants' Flawed Automobile Reimbursement Policy*

13. Defendants require their delivery drivers to maintain and pay for safe, legally operable, and insured automobiles when delivering pizza and other food items.

14. Defendants' delivery drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses ("automobile expenses") while delivering pizza and other food items for the primary benefit of Defendants.

15. Defendants' delivery driver reimbursement policy is to not make any reimbursement on any basis. This policy applies to all of Defendants' delivery drivers.

16. During the applicable FLSA limitations period, the IRS business mileage reimbursement rate ranged between $.535 and $.575 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the AAA, have determined that the average cost of owning and operating a vehicle ranged between $.571 and $.608 per mile during the same period for drivers who drive 15,000 miles per year. These figures represent a reasonable approximation of the average cost of owning and operating a vehicle for use in delivering pizzas.

17. However, the driving conditions associated with the pizza delivery business cause even more frequent maintenance costs, higher costs due to repairs associated with driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver. Defendants' delivery drivers further experience lower gas mileage and higher repair costs than the average driver used to determine the average cost of owning

and operating a vehicle described above due to the nature of the delivery business, including frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures.

18.     Defendants' reimbursement policy – that is, their policy not to reimburse for any costs whatsoever related to use of the drivers' personal vehicles – does not reimburse delivery drivers for even their ongoing out-of-pocket expenses, much less other costs they incur to own and operate their vehicle, and thus Defendants uniformly fail to reimburse their delivery drivers at any reasonable approximation of the cost of owning and operating their vehicles for Defendants' benefit.

19.     Defendants' systematic failure to reimburse automobile expenses constitutes a "kickback" to Defendants such that the hourly wages they pay to Plaintiff and Defendants' other delivery drivers are not paid free and clear of all outstanding obligations to Defendants.

20.     Plaintiff and similarly situated drivers were paid less than minimum wage, and Defendants' failure to reasonably reimburse the amount of their drivers' automobile expenses diminishes their wages even further below the federal and state minimum wage requirements.

21.     In sum, Defendants' reimbursement policy fails to reflect the realities of delivery drivers' automobile expenses.

C.  *Defendants' Failure to Reasonably Reimburse Automobile Expenses Exacerbates Already-Existing Minimum Wage Violations*

22. Plaintiff was paid $6.50 per hour plus tips during his employment with Defendants.

23. The federal minimum wage has been $7.25 per hour since July 24, 2009. The Minnesota minimum wage has been $9.86 per hour since January 1, 2019, and during the time Plaintiff worked for the Defendants was approximately $9.50.

24. During the time Plaintiff has worked for Defendants as a delivery driver, he was not reimbursed any monies for delivery and on average drove 10-12 miles per delivery. During his employment by Defendants, Plaintiff regularly made 4 to 5 deliveries per hour.

25. During the relevant time period, the IRS business mileage reimbursement rate ranged between $.56 and $.535 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. *See* http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using the lowest IRS rate ($.535 per mile) in effect during that period as a reasonable approximation of Plaintiff's automobile expenses, every mile driven on the job decreases his net wages by at least $.535 per mile.

26. During his employment by Defendants, Plaintiff was paid at a rate less than the federal minimum wage of $7.25, and well under the state minimum wage of approximately $9.50. In addition, since Plaintiff was not reimbursed anything at all for the use of his personal vehicle, he likely experienced a net loss in wages for every hour he made deliveries.

27. All of Defendants' delivery drivers had similar experiences to those of Plaintiff. They were subject to the same reimbursement policy; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid below the federal minimum wage before deducting unreimbursed business expenses.

28. Because Defendants paid their drivers a gross hourly wage below the federal minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause even more dramatic minimum wage violations, likely resulting in a net loss to drivers.

29. Defendants' lack of reimbursement was a frequent complaint of Defendants' delivery drivers, which resulted in repeated discussions with management, yet Defendants continued to fail to reimburse for automobile expenses. Upon information and belief, one driver was terminated after he voiced objections to the flawed reimbursement policy.

30. The net effect of Defendants' flawed reimbursement policy is that not only have Defendants have willfully failed to pay the federal minimum wage to their delivery drivers by paying $6.50 per hour, but the policy not to reimburse results in drivers operating at a net loss. Defendants thereby enjoy ill-gained profits at the expense of their employees.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

31. Plaintiff brings this FLSA claim as an "opt-in" collective action on behalf of similarly situated persons pursuant to 29 U.S.C. § 216(b).

32. The FLSA claims may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

33. Plaintiff, individually and on behalf of other similarly situated persons, seeks relief on a collective basis challenging Defendants' practice of failing to pay employees federal minimum wage. The number and identity of other plaintiffs yet to opt-in may be ascertained from Defendants' records, and potential class members may be notified of the pendency of this action via mail and electronic means.

34. Plaintiff and all of Defendants' delivery drivers are similarly situated in that:

   a. They have worked as delivery drivers for Defendants delivering pizza and other food items to Defendants' customers.
   b. They have delivered pizza and food items using automobiles not owned or maintained by Defendants;
   c. Defendants required them to maintain these automobiles in a safe, legally operable, and insured condition;
   d. They incurred costs for automobile expenses while delivering pizzas and food items for the primary benefit of Defendants;
   e. They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;
   f. They were subject to the same pay policies and practices of Defendants;
   g. They were subject to the same delivery driver reimbursement policy that under-estimates automobile expenses per mile, and thereby systematically deprived of reasonably approximate reimbursements, indeed of **_any_** reimbursement resulting in wages below the federal minimum wage in some or all workweeks;
   h. They were uniformly unreimbursed for automobile expenses per delivery; and,
   i. They were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

35. Plaintiff brings Count II, Count III, and Count IV as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and as the Class Representatives of the following persons (the "Class"):

> All current and former delivery drivers employed by Defendants since the date 3 years preceding the filing of this Complaint.

36. The state law claims, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Class.

37. The Class satisfies the numerosity standard as it consists of hundreds of persons who are geographically dispersed and, therefore, joinder of all Class members in a single action is impracticable.

38. Questions of fact and law common to the Class predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendants' actions include, without limitation:

   a. Whether Defendants failed to pay Class members the minimum wage required by Minnesota law;
   b. Whether Defendants failed to reasonably reimburse Class members for using their own vehicles to deliver Defendants' pizzas and other food items;
   c. Whether Defendants' failure to calculate the payment of reimbursement for vehicle expenses resulted in unreasonable under-reimbursement of the Class members; and
   d. Whether Defendants failed to keep accurate records of deductions from Class members' wages in violation of Minnesota law.

39. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

40. Plaintiff's claim is typical of those of the Class in that:

   a. Plaintiff and the Class have worked as delivery drivers for Defendants delivering pizza and other food items to Defendants' customers;

b. Plaintiff and the Class delivered pizza and food items using automobiles not owned or maintained by Defendants;

c. Defendants required Plaintiff and the Class to maintain these automobiles in a safe, legally operable, and insured condition;

d. Plaintiff and the Class incurred costs for automobile expenses while delivering pizzas and food items for the primary benefit of Defendants;

e. Plaintiff and the Class were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f. Plaintiff and the Class were subject to the same pay policies and practices of Defendants;

g. Plaintiff and the Class were subject to the same delivery driver reimbursement policy that failed to reimburse them for the business use of their vehicles, and thereby systematically deprived them of reasonably approximate reimbursements, resulting in wages below the federal minimum wage in some or all workweeks;

h. Plaintiff and the Class were not reimbursed for any automobile expenses per delivery or per mile or on any other basis; and

i. Plaintiff and the Class were paid below state and federal minimum wage before deducting unreimbursed business expenses.

41. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the Class.

42. Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interest of the members of the Class he seeks to represent. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

43. Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Class

have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Class, and there are no material difficulties impairing the management of a class action.

44. It would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938

45. Plaintiff reasserts and re-alleges the allegations set forth above.

46. The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a).

47. Defendants are subject to the FLSA's minimum wage requirements because they constitute and operate an enterprise engaged in interstate commerce, and their employees are engaged in commerce.

48. At all relevant times herein, Plaintiff and all other similarly situated delivery drivers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

49. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. None of the FLSA exemptions apply to Plaintiff or other similarly situated persons.

50. Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

51. As alleged herein, Defendants paid employees wages below the federal minimum wage.

52. As alleged herein, Defendants have not reimbursed delivery drivers at all, which further diminishes these employees' wages beneath the federal minimum wage.

53. Defendants knew or should have known that their pay and reimbursement policies, practices and methodology result in failure to compensate delivery drivers at the federal minimum wage.

54. Defendants, pursuant to their policy and practice, violated the FLSA by refusing and failing to pay federal minimum wage to Plaintiff and other similarly situated persons.

55. Plaintiff and all similarly situated persons are victims of a uniform and employer-based compensation and reimbursement policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all delivery driver employees in Defendants' stores.

56. Plaintiff and all similarly situated employees are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date each Plaintiff joins

this case, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful.

57. Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated persons are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants are not liable for liquidated damages, Plaintiff and all similarly situated persons are entitled to an award of prejudgment interest at the applicable legal rate.

58. As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated persons. Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

### COUNT II
### VIOLATIONS OF MINNESOTA WAGE LAW

59. Plaintiff reasserts and re-alleges the allegations set forth above.

60. At all relevant times, Defendants were to pay minimum wage consistent with the health, efficiency, and general well-being of their employees. Minn. Stat. Ann. § 177.21 *et. seq.*

61. Defendants have employed, and continue to employ, employees for services within the meaning of Minn. Stat. Ann. § 177.21 *et. seq.*

62.     The Defendants were required to pay Plaintiff and the Putative Plaintiffs wages, when due, for all hours of work at hourly rates which exceeded the minimum wage rate under the FLSA and Minnesota Wage Law on their regular pay date pursuant to Minnesota Wage Law.

63.     Defendants failed to pay Plaintiff and the Putative Plaintiffs reimbursements for travel expenses causing employees' wages to be oppressive and unreasonable under Minnesota Wage Law and thus failed to comply with this statute. Minn. Stat. Ann. § 177.21 *et. seq.*

64.     The foregoing conduct, as alleged, constitutes willful violations of Minnesota Wage Law.

65.     As set forth above, the Plaintiff and the Putative Plaintiffs have sustained losses and lost compensation as a proximate result of Defendants' violations. Accordingly, Plaintiff on behalf of himself and the Putative Plaintiffs, seek damages in the amount of their unpaid earned compensation, liquidated damages, plus interest from the date each amount came due as provided by Minnesota Wage Law.

66.     As a result of the foregoing conduct, as alleged, Defendants have failed to pay wages due under Minnesota Wage Law and the FLSA, thereby violating, and continuing to violate, Minnesota Wage Law.

67.     Plaintiff, on behalf of himself and the Putative Plaintiffs, seek recovery of his attorneys' fees as provided by Minn. Stat. Ann. § 177.21 *et. seq.*

## COUNT III
## UNJUST ENRICHMENT

68. Plaintiff reasserts and re-alleges the allegations set forth above.

69. Plaintiff conferred a benefit upon Defendants by working on their behalf without compensation.

70. Defendants had an appreciation or knowledge of the benefit conferred by Plaintiff.

71. Defendants accepted and retained the benefit under such circumstances as to make it inequitable for Defendants to retain the benefit without payment of its value.

72. Defendants were at fault for failing to pay Plaintiff full compensation.

73. Because Plaintiff and Defendants entered into no contractual relationship, Plaintiff has no contractual or other avenues for redress of his claim.

74. Plaintiff, on behalf of himself and the Putative Plaintiffs, seeks recovery from Defendant's unjust enrichment for himself and other class members.

## COUNT IV
## *QUANTUM MERUIT*

75. Plaintiff reasserts and re-alleges the allegations set forth above.

76. Plaintiff conferred a measurable benefit upon Defendants by working on their behalf without compensation.

77. Plaintiff reasonably expected compensation from the Defendants for the full value of using his vehicle for their benefit.

78. Defendants had an appreciation or knowledge of the benefit conferred by Plaintiff.

79. Defendants accepted and retained the benefit under such circumstances as to make it inequitable for Defendants to retain the benefit without payment of its value.

80. Defendant was at fault for failing to pay Plaintiff full compensation.

81. Because Plaintiff and Defendants entered into no contractual relationship, Plaintiff has no contractual or other avenues for redress of his claim.

82. Plaintiff, on behalf of himself and the Putative Plaintiffs, seeks recovery for himself and other class members based upon *Quantum Meruit.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand judgment against Defendants and pray for: (1) compensatory damages; (2) liquidated damages, (3) costs of litigation and attorney's fees as provided by law; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury of all issues triable by jury.

Dated: October 17, 2019          **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

By: /s/ Karen Hanson Riebel
Karen Hanson Riebel (MN #219770)
Kate M. Baxter-Kauf (MN #392037)
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
khriebel@locklaw.com
kmbaxter-kauf@locklaw.com

Joe P. Leniski, Jr.* (TN BPR#022891)
**BRANSTETTER, STRANCH & JENNINGS, PLLC**
223 Rosa Parks Ave. Suite 200
Nashville, TN 37203
Telephone: 615/254-8801
Facsimile: 615/255-5419
Email: joeyl@bsjfirm.com

Jay Forester*, Texas Bar No. 24087532
**FORESTER HAYNIE PLLC**
1701 N. Market Street, Suite 210
Dallas, Texas 75202
(214) 210-2100 phone
(214) 346-5909 fax
Email: jay@foresterhaynie.com

*pro hac vice* forthcoming